IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 9, 2014

**NELSON V. PLANA v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Montgomery County**
**No. 40100094    Paul Summers, Senior Judge**

---

**No. M2014-00359-CCA-R3-PC - Filed October 29, 2014**

---

The petitioner, Nelson V. Plana, appeals the denial of his petition for post-conviction relief, which petition challenged the petitioner's 2004 Montgomery County Circuit Court jury convictions of two counts of first degree murder. In this appeal, the petitioner claims entitlement to post-conviction relief based upon the allegedly ineffective assistance of his trial counsel. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and TIMOTHY L. EASTER, JJ., joined.

Chase T. Smith, Clarksville, Tennessee, for the appellant, Nelson V. Plana.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Assistant Attorney General; John W. Carney, District Attorney General; and Helen Young, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At the conclusion of a three-day trial in July 2004, a Montgomery County Circuit Court jury convicted the defendant of two counts of premeditated murder and one count of felony murder for the January 1, 2001 shooting deaths of Ivelys Miranda and her six-year-old son, Adan Daniel Rodriguez. *See State v. Nelson Vega Plana*, No. M2008-00717-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Nashville, June 22, 2009). The proof adduced at trial established that on that date, officers discovered Ms. Miranda and her son wounded but alive inside the apartment shared by the petitioner and Radames Melendez. Both later died from their injuries. Ms. Miranda had ended her relationship with the

defendant shortly before the murders, and the petitioner was angry about the demise of that relationship. Sometime between 11:00 and 11:30 p.m., Ms. Miranda took her son with her to the petitioner's apartment to speak with him, and she told a witness that she was taking her son "'so that nothing would happen.'" *Id.*, slip op. at 2. When Mr. Melendez returned to his apartment at 11:40 p.m. to get some beer, he saw Ms. Miranda seated on a small sofa and her son playing on the floor. The petitioner was seated on the larger sofa, and no one spoke to Mr. Melendez while he was in the apartment. Mr. Melendez left and returned to the New Year's Eve party being held in a nearby apartment. At approximately 12:04 a.m., Mr. Melendez again returned to his apartment, and inside he discovered both Ms. Miranda and her son on the small sofa. Both had been shot, Ms. Miranda a single time in the head and her son twice in the head. The petitioner was arrested at the bus station, and he later made an inculpatory statement to police. *See id.* The jury convicted the defendant as charged but deadlocked on the issue of punishment, resulting in the defendant's being sentenced to an automatic term of life imprisonment for each of the murders. *See id.*, slip op. at 5. The trial court ordered the sentences to be served consecutively. This court affirmed the petitioner's convictions and sentences on direct appeal, *see id.*, slip op. at 13, and our supreme court denied permission to appeal, *see State v. Nelson Vega Plana*, M2008-00717-SC-R11-CD (Tenn. Apr. 16, 2010).

The petitioner filed a petition for post-conviction relief on October 19, 2009, alleging, among other things, that he was deprived of the effective assistance of counsel at trial and on appeal.[1] In an amended petition for post-conviction relief filed by appointed counsel on February 15, 2011, the petitioner again alleged that he had been deprived of the effective assistance of counsel. In February 2012, the post-conviction court granted the petitioner's motion to relieve his appointed counsel and appoint replacement counsel. Replacement counsel later filed a motion seeking recusal of the post-conviction judge on grounds that the judge had "once practiced law with [trial counsel] while a practicing lawyer" and that the judge had indicated that this relationship "would preclude him from potentially finding [trial counsel] 'ineffective.'"[2] The judge granted the petitioner's motion, recused himself from the post-conviction action, and ordered "that a Circuit Court Judge outside of this judicial district be appointed to preside over any future proceedings associated with this matter." The Chief Justice of our supreme court appointed Senior Judge Paul G. Summers to preside over the petitioner's post-conviction case.

---

[1]We glean from the sparse and disorganized record in this case that the petitioner was granted a delayed appeal for the limited purpose of seeking discretionary review by our supreme court. This explains why the denial of the petitioner's application for permission to appeal came after his initial post-conviction filing.

[2]The petitioner's motion indicates that the trial judge had already recused himself from presiding over the post-conviction action, but no order of recusal appears in the record.

At the November 27, 2013 evidentiary hearing, trial counsel testified that he and co-counsel, who had passed away before the hearing, were appointed to represent the petitioner "early on" in the case and that he "remained with the case until [he] was compelled to leave due [to] another job that [he] took." He recalled that the State initially sought the death penalty against the petitioner but withdrew the death notice "a week or ten days before the trial . . . and we went to the trial with the State seeking life without" parole. Counsel said that he and co-counsel utilized the services of an investigator with experience in investigating death penalty cases. He said that the investigation went on for more than a year.

Trial counsel characterized the proof against the petitioner as "largely circumstantial," consisting mostly of witness statements indicating that the petitioner had been with the victims at the time of their death. Regarding the petitioner's claim that counsel should have produced evidence of an 11:38 p.m. telephone call from the apartment where the victims were discovered to a woman named Mallory Williams, counsel stated that he did not believe that proof of the telephone call would have had much impact on the trial because the proof established that the murders occurred after 11:38 p.m.

Counsel identified a memorandum prepared by his investigator that purported to memorialize an interview with Ms. Williams, and in that interview, Ms. Williams said that she did not know the petitioner. Counsel said that he and co-counsel "looked at those calls pretty carefully and decided which ones were helpful, hurtful[,] or neutral," so he felt confident that the decision not to introduce proof of that call was an intentional one, even though he had no specific recollection of making the decision.

Counsel said that he could not recall precisely what testimony Mr. Melendez had offered at trial, but he opined that "the suggestion that because Mr. M[e]lendez says he went to get beer and someone else says he didn't would constitute an attack on his credibility, seems . . . to be naive." He stated that "the story about the beer . . . was corroborated by other witnesses, but whether it was or was not it was not critical to whether [the petitioner] had done anything wrong that night."

With regard to the issue whether the petitioner had a key to the apartment where the victims were murdered, counsel said that he recalled "the issue of a key coming up, but also . . . other people were there and . . . may have let him in. . . . [H]is presence in the apartment was undeniable."

During cross-examination, counsel agreed that the proof at trial established that Ms. Miranda telephoned the petitioner at 11:38 p.m., just before leaving the party to go speak with the petitioner. A witness later telephoned the apartment where the petitioner was staying and where the victims were later found dead and asked to speak with Ms. Miranda.

-3-

Although the petitioner did not permit the witness to speak with Ms. Miranda, the witness testified that she could hear both victims in the background. Both Ms. Miranda's telephone call to the petitioner and the later call to the petitioner to check on the victims were corroborated by telephone records. Telephone records also showed that a telephone call was placed to Ms. Williams' number, but the duration of that call was less than a minute. Counsel said that he did not believe the telephone call to Ms. Williams' number to be "strong evidence in favor of the defense, because it's obvious that whatever happened in that apartment had happened after the 11:54 call."

Upon questioning by the court, trial counsel stated that in his nearly 41 years of practicing law, he "had handled thousands of matters" and that he had "tried about 150 jury trials to verdict," including more than 40 murder trials. He stated that he had also handled a number of death penalty cases.

Detective Cheryl Anderson testified that, as a result of an interview with an individual named Jorge Duncan, police came to the conclusion that it was possible that someone had telephoned Ms. Williams in an attempt to locate Mr. Duncan, who was a friend of the petitioner. She said that Mr. Duncan did not live in the apartment where the victims were found and that he had no telephone. Detective Anderson said that Mr. Duncan had been in the apartment earlier on New Year's Eve 2000.

The post-conviction court took the petition under advisement, and in its written order denying post-conviction relief, determined that the petitioner had failed to establish that his counsel performed deficiently. The court specifically accredited trial counsel's testimony regarding the 11:38 p.m. telephone call to Ms. Williams. The court stated that it would not speculate what Ms. Williams' trial testimony might have been and that, based upon the accredited testimony of trial counsel, the telephone call was "not particularly relevant to any conceivable defense in this case." The court also accredited counsel's testimony "that the fact that some third party did not see Mr. Melendez leave the party would not constitute an effective attack on Mr. Melendez's credibility." Regarding the petitioner's claim that counsel should have presented proof that the petitioner did not have a key to the apartment where the victims were found, the court noted that the petitioner did not present any proof to substantiate his claim that he did not have a key. The court also observed that the proof at trial overwhelmingly established the petitioner's presence in the apartment with the victims at the time of their death.

In this timely appeal, the petitioner reiterates his claim of ineffective assistance of counsel, claiming that his trial counsel performed deficiently by failing to present proof of the telephone call to Ms. Williams at 11:38 p.m. The State contends that the post-conviction court did not err by denying relief.

-4-

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A.§ 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the post-conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn.1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn.1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App.1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In our view, the fact that a telephone call was placed at 11:38 p.m. to Ms. Williams from the apartment where the petitioner had been staying and where the victims were found dead would have had little or no impact upon the verdict in this case. As counsel testified and the proof at trial established, the murders occurred sometime after 11:38 p.m. and, in fact, after an 11:54 p.m. call to the apartment to check on the victims. Moreover, the telephone records established that the call lasted less than one minute, and other proof at trial established that other individuals were in and out of the apartment throughout the evening prior to the murders. Finally, the petitioner failed to present the testimony of either Ms.

Williams or Mr. Duncan at the evidentiary hearing; thus, the court is left to speculate about what testimony those individuals might have offered at trial. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). Under these circumstances, the 11:38 p.m. telephone call to Ms. Williams is apparently irrelevant because it does not tend to make any fact of consequence more or less probable. *See* Tenn. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). In any event, trial counsel did not perform deficiently by failing to offer evidence of the telephone call at trial.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE